[Civ. No. 1977.   Second Appellate District.—July 6, 1916.]

CITY OF LOS ANGELES (a Municipal Corporation), Respondent, v. ROSCOE E. MOORE et al., Defendants.

JOHN GRIFFIN JOHNSTON, Cross-complainant and Appellant, v. CITY OF LOS ANGELES (a Municipal Corporation), Cross-defendant and Respondent; O. B. CARTER, Cross-defendant and Respondent.

EMINENT DOMAIN—WIDENING OF CITY THOROUGHFARE—OWNERSHIP OF LAND—BURDEN OF PROOF.—In this action brought by the city of Los Angeles to condemn, for the purpose of widening a certain thoroughfare therein, an irregular plot of ground aligning a portion of the northeasterly boundary of lands patented to the city, and to which the appellant claimed ownership as devisee under the will of a grantee of the city to a large tract of land, which was claimed

to include the plot in question, it is held that by reason of the inaccuracies appearing in the surveys of the engineers who gave testimony for the appellant as to the monuments and lines of the land described in the deed of appellant's testate, the appellant had failed to sustain the burden of proof that the plot in dispute was included in the deed.

ID.—REPAYMENT OF SEWER ASSESSMENT—REDEMPTION FROM EXECUTION SALE—RIGHT TO REIMBURSEMENT.—The appellant in such action is not entitled, as a condition to a determination against his ownership of the property, to be repaid the amount of a sewer assessment, which he paid upon redeeming the property from an execution sale had on a judgment against him.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Frank G. Finlayson, Judge.

The facts are stated in the opinion of the court.

Charles Lantz, and Davis, Lantz & Wood, for Cross-complainant and Appellant.

Albert Lee Stephens, City Attorney, C. D. Pillsbury and Myron Westover, Deputy City Attorneys, for Plaintiff, Cross-defendant and Respondent.

Carter, Kirby & Henderson, for Cross-defendant and Respondent O. B. Carter.

JAMES, J.—This is an appeal taken by John Griffin Johnston, against whom judgment was entered and an order made denying his motion for a new trial. The appeal calls into question the correctness of the decision of the trial judge, wherein it was determined that said appellant had no interest in an irregular plot of ground aligning Avenue 20 in the city of Los Angeles, which the city by condemnation seeks to take for the purpose of widening that thoroughfare. The trial judge determined title to be in defendant O. B. Carter. That determination on the separate appeal of the city of Los Angeles taken to this court was affirmed in an opinion filed this day, *ante,* p. 39, [159 Pac. 872] (Civil No. 1975).

The land in question aligns a portion of the northwesterly boundary of lands patented to the city of Los Angeles. By deed made in 1863, the city of Los Angeles conveyed to John

S. Griffin and J. C. Welsh a large tract of land embracing more than two thousand acres. It was stipulated at the trial that the title to all of this land and the land in dispute was vested in the city of Los Angeles immediately prior to the making of the deed mentioned. Welsh subsequently conveyed to Griffin and Griffin later to one Hamilton, who subdivided the land so obtained into ''Hamilton's Subdivision'' and ''Hamilton's Additional Subdivision.'' Appellant Johnston, as the devisee under the will of John S. Griffin, claimed that the plot of land in dispute was included in the deed to Griffin and Welsh from the city, and was not included in the deed made by Griffin to Hamilton; hence, that it was distributed to him under the will in the estate of Griffin. Under the stipulation made, in effect that the title was in the city unless divested by the Griffin-Welsh deed, appellant at the trial assumed the burden of establishing that the land was located within the boundaries of the large tract conveyed to Griffin and Welsh. In order to establish the northwesterly boundaries of the plot so conveyed, it was necessary to locate the original patent boundary of the city. This boundary, as surveyed and described in the patent, starting from the northwest city patent corner, pursued a meandering course southwesterly to a point made by the junction of the Los Angeles River with the Arroyo Seco. From this point, called Station 35, the line proceeded in a northwesterly meandering course, following the bed of the Los Angeles River. Station 36, being the one immediately northwesterly of the point Station 35, was described as being at the edge of the water of the river. The river for some distance in that locality is confined on the west by a chain of hills composed in the main of a shale or rock formation. In the Griffin-Welsh deed the southerly corner of the land described was located at a monument marked by a mound of stones, the location of which the testimony showed was well known to old residents and its location was by the testimony accurately fixed at the trial. The testimony of the surveyors, who attempted to trace the lines of the Griffin-Welsh land, showed that the monument mentioned at the southerly corner of the property was disregarded. The testimony also showed that had the location of this monument been taken as a starting point and the line run northerly, the land in dispute would have been thrown without the parcel conveyed to Griffin and Welsh. The inaccuracy of the lines of these surveyors was also illustrated in the testi-

mony by showing that, assuming the points taken by them to correctly locate stations on the northwesterly city patent line, by turning the angle at the point Station 35 at the south and starting northwesterly according to the angle and call of the patent description, Station 36 would not have been located in the edge of the stream of the Los Angeles River, but would have been thrown on the hillside to an elevation of seventy-three feet above the present river-bed. The testimony showed very conclusively that the bank of the river on the west was of rocky formation, and therefore could have been affected but little in the course of years by the current of the water. These inaccuracies appearing in the surveys of the engineers who gave testimony for appellant, the trial judge held that the burden of showing that the title of the city had been divested by the Griffin-Welsh deed had not been sustained. In this conclusion we agree. It is said that defendant Carter cannot raise the question that the land was not so included in the Griffin-Welsh deed, because he affirmed in his answer that the land was so included. It is true that in one of the defenses set out Carter did make that allegation, but he expressly abandoned and disclaimed that contention at the trial, and hence we think that allegation cannot be viewed as an admission of the fact contended for. The maps made by the city covering the lands of Griffin Subdivision show recognition of the "Sepulveda Corner," that being the point marked by the mound of stones hereinbefore referred to at the south line of the Griffin tract. Defendant Carter introduced in evidence, as declarations against interest, sworn statements made to the city assessor by John S. Griffin for eight different years, the first being for 1883 and the last for 1898, which statements purported to set forth all of the land owned by Griffin in the city of Los Angeles, and none of these statements described any of the land in dispute. It was not error to allow in evidence the decree in an action to quiet title brought by one Fox against the city of Los Angeles, which was introduced by Carter. That action is described in the opinion treating of the appeal of the city as against Carter. It was competent evidence against the city, and if not relevant to the issues as between Johnston and Carter, could have no prejudicial effect, in view of the conclusion as indicated that Johnston did not sustain the burden of proof that the land in dispute was within the plot described in the Griffin-Welsh deed.

Finally, it is claimed on the part of appellant Johnston that a determination in favor of the title of Carter should only be made upon a condition for the repayment to Johnston of the sum of $284.85, which amount, prior to the trial in the action, had been assessed against the property to cover municipal sewer improvements. The payment of the claim arose in this way: There was a judgment in the superior court in a separate matter against Johnston and others amounting to the sum of $1,053.10, which Carter became the owner of by purchase. Carter caused an execution to be issued upon this judgment and a levy and sale made against any interest which Johnston might have in the land in dispute. At this sale Carter caused such interest to be struck off to the nominal party who was acting for him, for the sum of five hundred dollars, which was credited upon the judgment. The sewer assessments becoming payable, Carter caused these to be paid, and notified the sheriff that if Johnston made redemption under the execution sale, that these sewer assessments should be included in the redemption charge. A mortgagee of Johnston redeemed, paying the five hundred dollars and also the $284.85 required for sewer improvements. It is the latter amount that Johnston claims the court should have required by its judgment to be repaid to him. We think this contention is without merit. If Johnston, as is here determined, had no interest in the property, he was not, nor was his mortgagee, required to redeem, and if they had refused to do so, the result would have been that Johnston would have had a credit of five hundred dollars on the judgment entered against him. Having chosen to redeem, speculating upon it being determined that he had some interest in the property which had been made the subject of the execution sale, he, in our view, was a voluntary actor, and a court of equity in such an action as this would not lend him aid in the direction of recovery for the sewer assessments paid. This was not a case where Carter as the moving party sought to have cleared away a cloud caused by a sale or assessment against his property; the title in him as it is now determined was clear of any such lien, real or apparent.

Our conclusion is that the evidence fully sustains the judgment as made by the trial court; that no errors appear which warrant a new trial being granted to appellant.

The judgment and order are affirmed.

Conrey, P. J., and Shaw, J., concurred.